SETH P. WAXMAN (*pro hac vice*)
seth.waxman@wilmerhale.com
PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:  (202) 663-6800
Facsimile:  (202) 663-6363

MARK D. FLANAGAN (CA SBN 130303)
mark.flanagan@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

*Attorneys for Defendant*
**TWITTER, INC.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| TAMARA FIELDS, et al., <br><br>       Plaintiffs, <br><br>   v. <br><br> TWITTER, INC., <br><br>       Defendant. | Case No. 3:16-cv-00213-WHO <br><br> **DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge: Hon. William H. Orrick <br><br> [Fed. R. Civ. Proc. 12(b)(6)] <br><br> Hearing Date:  2:00 PM, October 26, 2016 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

NOTICE OF MOTION AND MOTION ......................................................................1

STATEMENT OF REQUESTED RELIEF..................................................................1

STATEMENT OF ISSUES TO BE DECIDED ..........................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................2

FACTUAL BACKGROUND.......................................................................................4

LEGAL STANDARDS ON A MOTION TO DISMISS.............................................5

ARGUMENT ..............................................................................................................6

I.      Section 230 Requires Dismissal Of Plaintiffs' Claims ...................................7

        A.      The Allegations Actually Pled In The Second Amended Complaint
                Continue To Premise Liability On Third-Party Content...........................7

        B.      Plaintiffs' Accounts-Provision Theory Still Impermissibly Treats
                Twitter As A Publisher Of Third-Party Content.....................................9

        C.      Plaintiffs' Allegations About Proximate Causation Continue To Be
                Based On Third-Party Content..............................................................10

II.     The Second Amended Complaint Still Fails To Allege Facts Plausibly
        Establishing That Twitter Proximately Caused The Deaths Of Mr. Fields
        And Mr. Creach .............................................................................................10

III.    No Further Amendment Should Be Permitted ................................................13

CONCLUSION............................................................................................................13

CERTIFICATE OF SERVICE

PROPOSED ORDER

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................5, 6

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)................................................3, 7, 9, 10, 11

*Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014) ..................................................................................................................................6

*Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008) ...........................................................................9

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (en banc)..............................................................................6, 7

*Fields v. Twitter, Inc.*, 2016 WL 4205687 (N.D. Cal. Aug. 10, 2016) ................................. *passim*

*Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351 (9th Cir. 1996) ...........................13

*Holmes v. Secur. Inv. Protection Corp.*, 503 U.S. 258 (1992) .....................................................12

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) .......................................................6

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................................................................................13

*In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*, 714 F.3d 118 (2d Cir. 2013) .................................................................................................................................11

*In re Terrorist Attacks on Sept. 11, 2001 (Burnett v. Al Baraka Inv. & Dev. Corp.)*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005), *aff'd*, 714 F.3d 118 (2d Cir. 2013) ..................................................................................................................................6

*Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016)............................................9

*Kimzey v. Yelp! Inc.*, __F.3d__, 2016 WL 4729492 (9th Cir. Sept. 12, 2016) ..............................9

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ............................................................6

*Papasan v. Allain*, 478 U.S. 265 (1986) .....................................................................................6

*Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902 (N.D. Cal. 2015) ...............................................6

*Scognamillo v. Credit Suisse First Boston, LLC,* 587 F. Supp. 2d 1149 (N.D. Cal. 2008) .................................................................................................................................13

*Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128 (N.D. Cal. 2010).........................13

## STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 2331 ......................................................................................................................7

18 U.S.C. § 2333 ...........................................................................................................1, 4, 11

18 U.S.C. § 2339A ...................................................................................................................5

18 U.S.C. § 2339B ...................................................................................................................5

47 U.S.C. § 230 ...........................................................................................1, 2, 3, 6, 7, 9, 10, 11

Fed. R. Civ. Proc. 12(b)(6) .................................................................................................1, 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 26, 2016, at 2:00 PM, in Courtroom 2, 17th Floor, United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Defendant Twitter, Inc. ("Twitter" or "Defendant") shall and hereby does move for an order dismissing with prejudice all claims presented in Plaintiffs' Second Amended Complaint. This motion is supported by the following Memorandum of Points and Authorities and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

## STATEMENT OF REQUESTED RELIEF

Pursuant to Fed. R. Civ. Proc. 12(b)(6), Defendant Twitter requests that the Court dismiss with prejudice all claims presented in Plaintiffs' Second Amended Complaint.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether 47 U.S.C. § 230 ("Section 230"), which broadly immunizes online intermediaries from liability for harms allegedly resulting from third-party content, bars this action, which seeks to hold Twitter liable under 18 U.S.C. § 2333(a) based on allegations that Twitter failed to block or remove accounts that ISIS affiliates allegedly used to transmit terrorist content via Twitter's online communications platform.

2. Whether the Second Amended Complaint fails to state a claim under the federal Terrorism Civil Remedy Provision, 18 U.S.C. § 2333(a), because:

   a. The Second Amended Complaint fails to allege facts that would establish that Twitter proximately caused the deaths of Mr. Fields and Mr. Creach; and

   b. The Second Amended Complaint fails to allege facts that would establish that Twitter committed an "act of international terrorism" within the meaning of that provision.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs' Second Amended Complaint (SAC) suffers from the same flaws as Plaintiffs' First Amended Complaint (FAC) and should be dismissed for the same reasons that this Court dismissed the FAC. *See Fields v. Twitter, Inc.*, 2016 WL 4205687 (N.D. Cal. Aug. 10, 2016) (Dkt. No. 47). The SAC relies entirely on one of the two theories that Plaintiffs advanced in their opposition to Twitter's previous motion to dismiss and that this Court has already rejected—the theory that Twitter should be held liable for Plaintiffs' injuries because Twitter allegedly failed to block or remove accounts used by ISIS affiliates or supporters to allegedly transmit terrorist content over Twitter's online platform. Attempting to support that theory, the SAC largely repleads the same allegations as the FAC but in a different order and under different headings, while occasionally sprinkling in allegations that "Twitter knowingly and recklessly *provided ISIS with accounts* on its social network." SAC ¶ 1, Dkt. No. 48 (emphasis added).[1]

In dismissing the FAC, this Court held that Plaintiffs' "provision of accounts" theory is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c). *See Fields*, 2016 WL 4205687, at \*6-\*8. Nothing in the SAC suffices to disturb that conclusion. *First*, just like the FAC, the SAC is "riddled with detailed descriptions of ISIS-related messages, images, and videos disseminated through Twitter and the harms allegedly caused by the dissemination of that content." *Id.* at \*6. Putting labels aside—as Section 230 requires—the SAC continues to "describe a theory of liability based on Twitter's knowing failure to prevent ISIS from disseminating content through the Twitter platform, not its mere provision of accounts to ISIS," and so runs afoul Section 230. *Id.* at \*5. *Second*, as this Court explained, Twitter's decisions

---

[1] Plaintiffs seem to abandon the second theory that they pressed in their opposition to Twitter's motion to dismiss—that by making a direct messaging tool widely available, Twitter had provided material support to terrorists or to a designated terrorist organization. The SAC still relies on direct messaging to support its assertion that Twitter proximately caused Plaintiffs' injuries. SAC ¶¶ 43-45 (alleging ISIS recruited new members by sending direct messages to potential recruits). But it no longer alleges that Twitter's provision of a direct messaging service constituted a form of material support. In any event, for the reasons this Court has already given, Section 230 precludes any direct messaging theory. *Fields*, 2016 WL 4205687, at \*9-\*10; *see also* Reply, Dkt. No. 32 at 7-9.

about *who* may open or keep an account—and so *who* may post content to its platform—are themselves publisher choices about *what* content may be posted.  *See id.* at *6-*8.  Because the "provision of accounts" theory on which the SAC relies turns on "Twitter's alleged violation of a 'duty … derive[d] from [its] status or conduct as a publisher,'" it is barred by Section 230.  *Id.* at *6 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009)).  *Third*, the SAC *confirms* that content created by third parties is essential to Plaintiffs' attempts to plead and prove that Twitter proximately caused Plaintiffs' injuries:  The SAC now expressly groups many of its allegations about content created by third parties under the new heading "Twitter Proximately Caused Plaintiffs' Injuries."  SAC at 6; *id.* ¶¶ 41-71.  The SAC's new structure thus further reinforces the conclusion that Plaintiffs seek to hold Twitter responsible for harms arising from third-party content, and not "Twitter's mere provision of Twitter accounts to ISIS."  *Fields*, 2016 WL 4205687, at *9.  For each of these reasons, Section 230 once again requires that Plaintiffs' claims be dismissed.

This Court also held that under any proximate cause standard "the allegations in the FAC do not support a plausible inference of proximate causation between Twitter's provision of accounts to ISIS and the deaths of Fields and Creach."  *Fields*, 2016 WL 4205687, at *9.  The SAC attempts to escape that holding by replacing the allegation that Abu Zaid was a "lone wolf" who had been inspired by ISIS's brutal execution of Jordanian pilot al-Kassasbeh, FAC ¶¶ 80, 84, with an allegation that he had once belonged to an ISIS sleeper cell, SAC ¶ 81.  But this Court was aware of Plaintiffs' sleeper cell allegation before issuing its decision, *see* Mot. to Dismiss Hearing Tr., Dkt. No. 40, at 14:9-11, and did not rely on the FAC's "lone wolf" allegation in the Order dismissing the FAC, *Fields*, 2016 WL 4205687, at *8-*9.  Whatever the connection between Abu Zaid and ISIS, the SAC adds nothing to support the only connection that could matter—i.e., one between Abu Zaid and *Twitter*.  For this reason as well, the SAC should be dismissed for failure to state a claim under the Terrorism Civil Remedy Provision.

During the motion to dismiss hearing, the Court granted Plaintiffs leave to amend in large part so that Plaintiffs could get the "complaint in the shape that [they would] like it for more receptive ears, if mine don't work out the way that you want them."  Mot. to Dismiss Hearing Tr.

at 27:5-8.  By merely reshuffling the same allegations and doubling down on theories that this Court has already rejected, Plaintiffs have made clear that they have already turned their attention to what they hope will be "more receptive ears."  Twitter respectfully urges the Court to speed Plaintiffs on their way by dismissing the Second Amended Complaint with prejudice.

**FACTUAL BACKGROUND**

The allegations in the SAC are laid out differently than the allegations in the FAC, but are otherwise nearly identical.  Like the FAC, the SAC alleges that a terrorist named Abu Zaid shot and killed Lloyd "Carl" Fields, Jr. and James Damon Creach in a terrorist attack on November 9, 2015 in Amman, Jordan, and that ISIS subsequently claimed responsibility for the attack.  SAC ¶¶ 1, 78, 80.  The SAC again fails to allege that Twitter had anything to do with the attack itself or that its platform was ever used by Abu Zaid.  It also continues to contain no allegations that ISIS recruited Abu Zaid through Twitter's online platform, or that he or ISIS used the Twitter platform to plan, carry out, or raise money for the attack.  Instead, once again, the sole alleged connection between Twitter and the attack in Jordan is that some of the hundreds of millions of individuals who maintained Twitter accounts before the attack were allegedly affiliated with or sympathetic to ISIS and allegedly used Twitter's platform to recruit new members, *id.* ¶¶ 42-52, fundraise, *id.* ¶¶ 53-57, and spread propaganda, *id.* ¶¶ 58-71.  And, once again, the SAC does not allege that Twitter created any of this content.  According to Plaintiffs, however, Twitter should have "take[n] a more proactive approach to countering terrorist messages and recruitment online."  SAC ¶ 32.  Based on these allegations, Plaintiffs seek treble money damages from Twitter under the Terrorism Civil Remedy Provision, 18 U.S.C. § 2333(a). *Id.* ¶¶ 84-87 (based on alleged violation of 18 U.S.C. § 2339A); ¶¶ 88-91 (based on alleged violation of 18 U.S.C. § 2339B).

The principle difference between the SAC and the FAC is cosmetic:  Plaintiffs have attempted to segregate their allegations about Twitter providing ISIS with accounts from their allegations about the information ISIS or its supporters posted or sent through those accounts. Allegations about accounts that previously were scattered throughout the FAC are now grouped at the top of the SAC under new, account-focused headers such as "Twitter Provided Accounts

To ISIS," and "Twitter Provided Accounts To ISIS Knowingly And Recklessly."  SAC at 2; *id.* ¶¶ 9-40.  And many of the FAC's prior allegations about how ISIS used those accounts to transmit content promoting ISIS's purposes have been consolidated under the new heading "Twitter Proximately Caused Plaintiffs' Injuries."  *Id.* at 6; *id.* ¶¶ 41-71.  Some content-focused allegations continue to appear in other parts of the SAC, however, most notably in allegations faulting Twitter for inadequately policing its platform.  *Id.* ¶¶ 30, 32, 36, 37, 40.  Plaintiffs have also replaced their allegation that Abu Zaid was a "lone wolf" who had been inspired by ISIS's horrific execution of Jordanian pilot Maaz al-Kassasbeh, FAC ¶¶ 80, 84, with an allegation that, according to Israeli military intelligence, Abu Zaid had been part of a clandestine ISIS terror cell at al-Mutah University in al-Karak, Jordan, SAC ¶¶ 80-81.  None of these changes are unexpected:  Plaintiffs' opposition to Twitter's motion to dismiss the FAC relied heavily on a "provision of accounts" theory, Dkt. No. 31, and Plaintiffs advised the Court of the allegation that Abu Zaid had been part of an "ISIS sleeper cell" at the motion to dismiss hearing, *see* Mot. to Dismiss Hearing Tr., Dkt. 40, 14:9-11.  In addition, the SAC acknowledges Twitter's recent announcement "that it has suspended 235,000 accounts since February [2016] for promoting terrorism."  SAC ¶ 40.

### LEGAL STANDARDS ON A MOTION TO DISMISS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A claim is plausible on its face only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 913 (N.D. Cal. 2015) (quoting *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008)).  Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014) (quoting

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Given "the extreme nature of the charge of terrorism," it is especially important in an action brought under the Terrorism Civil Remedy Provision that the Court take special care to ensure that the plaintiff has satisfied these basic pleading requirements. *In re Terrorist Attacks on Sept. 11, 2001 (Burnett)*, 349 F. Supp. 2d 765, 831 (S.D.N.Y. 2005), *aff'd*, 714 F.3d 118 (2d Cir. 2013). In such an action, "'fairness requires extra-careful scrutiny of Plaintiff['s] allegations.'" *Id.*

Section 230 requires dismissal at the threshold pleading stage where, as here, the defendant's entitlement to immunity "is evident from the face of the complaint." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *see also Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc) (Section 230 "protect[s] websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles.").

### ARGUMENT

The Second Amended Complaint should be dismissed for the same two independent reasons that this Court dismissed the First Amended Complaint. *First*, Section 230 bars Plaintiffs' claims because they continue to seek to hold Twitter liable for harms allegedly arising from content created by third parties and for Twitter's publishing conduct with respect to that content. *Second*, the Second Amended Complaint again fails to plead facts sufficient to establish an essential element of the Terrorism Civil Remedy Provision: that Twitter's own conduct proximately caused the deaths of Mr. Fields and Mr. Creach.[2]

---

[2] Twitter also incorporates and thereby preserves all of the arguments made in its motion to dismiss the FAC, including the argument that Plaintiffs have failed to allege facts that would establish that Twitter committed an act of "international terrorism" within the meaning of 18 U.S.C. § 2331(1), as the Terrorism Civil Remedy Provision requires. *See* Mot. to Dismiss, Dkt. No. 27, at 23-25; Reply, Dkt. No. 32, at 13-15. Nothing in the SAC cures that additional and independently dispositive defect.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  Section 230 Requires Dismissal Of Plaintiffs' Claims

Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties." *Roommates.com*, 521 F.3d at 1162.  As this Court's prior dismissal ruling recognized, this immunity provision mandates dismissal when (1) the defendant is a "provider … of an interactive computer service"; (2) the allegedly harmful content at issue was "provided by another information content provider," and not the defendant; and (3) the plaintiff is seeking to hold the defendant liable as a "publisher or speaker" of that content.  47 U.S.C. § 230(c)(1); *Fields*, 2016 WL 4205687, at *5; *see also Barnes*, 570 F.3d at 1100-1101.  There is no dispute in this case that "Twitter is an interactive computer service provider, or that the offending content highlighted in the FAC [and now the SAC] was provided by another information content provider."  *Fields*, 2016 WL 4205687, at *4; *see also* Mot. to Dismiss, Dkt. No. 27 at 12-13.  The only element of immunity Plaintiffs have ever disputed is "whether [their claims] seek to treat Twitter as a publisher or speaker."  *Fields*, 2016 WL 4205687, at *4.

This Court held that the claims in the FAC did seek to treat Twitter as a publisher and were therefore barred by Section 230 for three reasons: (1) as actually pled, the claims in the FAC sought to hold Twitter liable for third-party content, *Fields*, 2016 WL 4205687, at *5-*6; (2) holding Twitter liable for its decisions about whether particular third parties may open or maintain Twitter accounts inherently would be based on a duty derived from Twitter's "status or conduct as a publisher," and thereby necessarily (and impermissibly) treat it as a publisher of third-party content, *id.* at *6-*8; and (3) Plaintiffs had not and could not establish proximate cause without relying on third-party content.  *Id.* at *8-*9.  The claims alleged in the SAC are barred for these same reasons.

### A.  The Allegations Actually Pled In The Second Amended Complaint Continue To Premise Liability On Third-Party Content

The SAC, like the FAC, continues to "describe a theory of liability based on Twitter's knowing failure to prevent ISIS from disseminating content through the Twitter platform."  *Fields*, 2016 WL 4205687, at *5.  The SAC's new structure does not remedy that fundamental

defect.  "To be sure," the SAC, like the FAC, includes "some allegations … concerning Twitter's provision of accounts to ISIS."  *Id.*  Indeed, every allegation in the SAC about provision of accounts is identical to or derived from a corresponding allegation in the FAC.  *Compare* SAC ¶¶ 9-13, 20, 24, 29, 30, 32, 38, 39, 40, 43, 48, 56, 61, 66, 68, 69 *with* FAC ¶¶ 3-6, 20, 25, 33, 38, 43, 45, 49, 53, 59, 60, 62, 68, 69, 70, 84.  But the SAC also contains, and necessarily relies on, "detailed descriptions of ISIS-related messages, images, and videos disseminated through Twitter and the harms allegedly caused by the dissemination of that content."  *Fields*, 2016 WL 4205687, at *6; *see also* SAC ¶¶ 41-71.  And notably, the SAC continues to "specifically fault[] Twitter for failing to detect and prevent the dissemination of ISIS-related content through the Twitter platform."  *Fields*, 2016 WL 4205687, at *6 (citing FAC ¶ 60 (Twitter "failed to respond to pleas to shut down clear incitements to violence") and ¶ 66 (Twitter "does not actively monitor and will not censor user content")); *see also* SAC ¶¶ 30, 36 (reproducing *verbatim* FAC ¶¶ 60, 66); *id.* ¶¶ 32, 37 (further criticizing Twitter for inadequately policing *content*).  The SAC in fact *adds* an allegation concerning Twitter's alleged failure to prevent the dissemination of ISIS-related content on its platform.  SAC ¶ 40 ("[J]ust this month, Twitter announced that it has suspended 235,000 accounts since February *for promoting terrorism*, something that it previously refused to do." (emphasis added)). [3]

---

[3] While its falsity does not affect the legal analysis of this motion, the SAC's allegation that Twitter had "previously refused" to suspend accounts for promoting terrorism is simply untrue. Both the FAC and the SAC elsewhere acknowledge earlier efforts by Twitter to "shut down" ISIS-related accounts.  SAC ¶ 39; FAC ¶ 69.  And as explained in the Twitter blog post from which the SAC plucked the 235,000 number, Twitter had, during the half-year *before* February 2016, suspended 125,000 accounts for violating rules banning terrorist content on the Twitter platform.  *See* Twitter, *An update on our efforts to combat violent extremism*, *available at* https://blog.twitter.com/2016/an-update-on-our-efforts-to-combat-violent-extremism (last visited Sept. 13, 2016).  The Twitter Rules have always banned content that encourages terrorism under rules prohibiting "threats," as well as use of the platform "for any unlawful purposes or in furtherance of illegal activities," and have since April 2015 made that ban even more explicit by expressly prohibiting "threats of violence … including threatening or promoting terrorism."  *See* Mot. to Dismiss, Dkt. No. 27 at 6-7 & n.3.

The sole difference between the FAC and the SAC with respect to third-party content is that instead of scattering allegations about third-party content throughout the complaint, the SAC deploys nearly all of those allegations in only two places:  to support Plaintiffs' assertion that Twitter proximately caused Mr. Creach and Mr. Fields' deaths, *see* SAC ¶¶ 41-71, and to describe the steps that Twitter allegedly failed to take to drive ISIS content from its platform, *id.* ¶¶ 30, 32, 36, 37, 40.  Section 230 immunity, however, does not turn on and off based on how a plaintiff arranges her complaint; "'creative' pleading" cannot "circumvent [Section 230's] protections."  *Kimzey v. Yelp! Inc.*, __F.3d__, 2016 WL 4729492 (9th Cir. Sept. 12, 2016) (Nos. 14-35487, 14-35494) (slip op. 1) (rejecting attempt "to plead around [Section 230] to advance the same basic argument that the statute plainly bars"); *see, e.g.*, *Barnes*, 570 F.2d at 1102-1103; *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19-20 (1st Cir. 2016); *Doe v. MySpace*, 528 F.3d 413, 419-420 (5th Cir. 2008); *see also* Mot. to Dismiss, Dkt. No. 27 at 14-16; Reply, Dkt. No. 32 at 2-3.  Rather, "what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another."  *Barnes*, 570 F.3d at 1101-1102; *see also Fields*, 2016 WL 4205687, at *4.  As in the FAC, the entire premise of the SAC is that ISIS or its supporters used Twitter's platform to spread their hateful messages, and that Twitter should have taken more aggressive steps to keep such harmful content off its platform.  Such claims by definition treat Twitter as the "publisher" of the content at issue— exactly what Section 230 forbids.  *Barnes*, 570 F.3d at 1103 (immunity extends to "'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online'"); *see also* Mot. to Dismiss, Dkt. No. 27 at 9, 14-15.

**B.      Plaintiffs' Accounts-Provision Theory Still Impermissibly Treats Twitter As A Publisher Of Third-Party Content**

Plaintiffs' efforts to further highlight their provision of accounts theory also do not cure the second problem identified by this Court:  on its own terms, the provision of accounts theory of liability is barred by Section 230.  As this Court held, "decisions about whether particular third parties may have Twitter accounts" are no different, for purposes of Section 230 immunity, from decisions about "what particular third-party content may be posted."  *Fields*, 2016 WL

1   4205687, at *6.  Both decisions fundamentally are decisions to permit third parties to post

2   content, "it is just that under plaintiffs' provision of accounts theory, Twitter would be liable for

3   granting permission to post (through the provision of Twitter accounts) instead of for allowing

4   postings that have already occurred." *Id.*  Imposing liability on Twitter for failing to block

5   accounts allegedly associated with ISIS would "significantly affect Twitter's monitoring and

6   publication of third-party content by effectively requiring Twitter to police and restrict its

7   provision of Twitter accounts."  *Id.* at *8.  The provision of accounts theory is thus "based on

8   Twitter's alleged violation of a 'duty … derive[d] from [its] status or conduct as a publisher.'"

9   *Id.* at *6 (quoting *Barnes*, 570 F.3d at 1102); *see also* Reply, Dkt. No. 32 at 5-6.

10       Indeed, Plaintiffs' reorganization of the SAC only confirms that their claims

11   fundamentally rely on, and seek to hold Twitter liable for, content created by third parties.

12   Plaintiffs ultimately seek to hold Twitter liable for failing to block accounts created by ISIS

13   affiliates or supporters *because these accounts were used to post content* that ISIS has used to

14   recruit new members, SAC ¶¶ 42-52, fundraise, *id.* ¶¶ 53-57, and spread propaganda, *id.* ¶¶ 58-

15   71.  That is, Plaintiffs seek to hold Twitter liable not merely because ISIS obtained and

16   maintained Twitter accounts, but because ISIS transmitted content from those accounts.  Because

17   the SAC attempts to resurrect the provision of accounts theory that this Court has already

18   rejected, it should be dismissed.

19       **C.    Plaintiffs' Allegations About Proximate Causation Continue To Be Based On
             Third-Party Content**

20

21       Finally, the SAC emphatically underscores that Plaintiffs cannot avoid relying on third-

22   party content because any hope they have of satisfying the causation element of the Terrorism

23   Civil Remedy Provision, 18 U.S.C. § 2333, depends on such content.  This Court expressed

24   skepticism that "a theory based on Twitter's mere provision of Twitter accounts to ISIS" could

25   "plausibly allege[] the causal connection necessary to support" liability under the Terrorism Civil

26   Remedy Provision.  *See Fields*, 2016 WL 4205687, at *9 & n.4.  The Court noted that Plaintiffs

27   had heavily relied on content-based arguments in attempting to establish proximate causation.

28   *Fields*, 2016 WL 4205687, at *8 ("The rest of plaintiffs' arguments and allegations with respect

to proximate causation are similarly content-based.").  And the Court asked how "Twitter's mere provision of Twitter accounts to ISIS—conduct that allegedly created liability before 'the publication of any content' and would support liability '[e]ven if ISIS had never issued a single tweet,'—[could have] proximately caused the November 2015 shooting"?  *Id.* (quoting Opp'n, Dkt. No. 31 at 7-8).  Plaintiffs have now answered that question by doubling-down on their use of third-party content to attempt to satisfy the Terrorism Civil Remedy Provision's proximate cause requirement.  *See* SAC ¶¶ 41-71.  This overt and overwhelming reliance on third-party content confirms that Plaintiff's claims "inherently require[] the court to treat [Defendants] as the 'publisher or speaker' of content provided by another."  *Barnes*, 570 F.3d at 1101-1102; *see also* Reply, Dkt. No. 32 at 3-4.  For this and the other reasons discussed above and in Twitter's previous briefs, Section 230 bars Plaintiffs' claims.

## II.   The Second Amended Complaint Still Fails To Allege Facts Plausibly Establishing That Twitter Proximately Caused The Deaths Of Mr. Fields And Mr. Creach

The Second Amended Complaint also must be dismissed for a second reason identified in this Court's Order dismissing the FAC:  The SAC fails to state a claim for relief under the Terrorism Civil Remedy Provision because it fails to plead facts sufficient to plausibly establish that Plaintiffs were injured "by reason of" Twitter's conduct.  *See Fields*, 2016 WL 4205687, at *8-*9.

The Terrorism Civil Remedy Provision's "'by reason of' language … restricts the imposition of … liability [under the statute] to situations where plaintiffs plausibly allege that defendants actions proximately caused their injuries."  *In re Terrorist Attacks on Sept. 11, 2001, (Al Rajhi Bank)*, 714 F.3d 118, 123-125 (2d Cir. 2013).  As this Court noted, the parties "dispute the exact formulation of the appropriate causal test for civil liability under the ATA, [but] agree that the statute requires a showing of proximate causation."  *Fields*, 2016 WL 4205687, at *8.  But "[e]ven under plaintiffs' proposed 'substantial factor' test,'" and "regardless of the particular theory of liability [asserted by] plaintiffs," the allegations "do not support a plausible inference of proximate causation between Twitter's provision of accounts to ISIS and the deaths of Fields and Creach."  *Id.*

Plaintiffs' attempt to cure this additional dispositive defect is to no avail.  Even as between Abu Zaid and ISIS, the sole connection proffered by the SAC is that Abu Zaid, according to Israeli military intelligence, once belonged to a clandestine ISIS terrorist cell.  SAC ¶ 81.  This allegation replaces the allegation in the FAC that Abu Zaid was a "lone wolf," FAC ¶ 80, who, according to his brother, had been moved by "ISIS's brutal execution of Jordanian pilot Maaz al-Kassasbeh in February 2015," *id.* ¶ 84.  Whatever this new alleged connection means for the link between Abu Zaid and ISIS, it still leaves any connection between Abu Zaid and *Twitter* "tenuous at best."  *Fields*, 2016 WL 4205687, at *8.  As before, "Plaintiffs do not allege that ISIS recruited or communicated with Abu Zaid over Twitter, that ISIS or Abu Zaid used Twitter to plan, carry out, or raise funds for the attack, or that Abu Zaid ever viewed ISIS-related content on Twitter or even had a Twitter account."  *Id.* at *1.  There is, in sum, no allegation linking Twitter to Abu Zaid at all.  The "causal connection" on which the SAC relies is thus "too speculative [and] attenuated to raise a plausible inference of proximate causation."  *Fields*, 2016 WL 4205687, at *8 n.4.

It is hardly surprising that this "new" factual allegation should fail to change the outcome reached by the Court in its dismissal order.  The Court's analysis did not rely on the assumption that Abu Zaid was a "lone wolf" without connection to ISIS, *see Fields*, 2016 WL 4205687, at *8-*9, and the Court was aware when issuing its decision of the purported Israeli intelligence on which Plaintiffs rely.  *See* Mot. to Dismiss Hearing Tr., Dkt. 40, 14:9-11 ("[W]e've now come across evidence from Israeli military intelligence that the shooter in this case … was part of an ISIS sleeper cell.").  Because the SAC still fails to "plausibly allege[] the causal connection" necessary to support a claim under the Terrorism Civil Remedy Provision, it should be dismissed for this reason as well.[4]

---

[4] Twitter incorporates and thereby preserves the additional argument, not reached by the Court's dismissal order, that only a "direct relation between the injury asserted and the injurious conduct alleged" is sufficient to satisfy the Terrorism Civil Remedy's "by reason of" requirement. *Holmes v. Secur. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992); *see also* Mot. to Dismiss, Dkt. No. 27, at 21; Reply, Dkt. No. 32, at 11.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    No Further Amendment Should Be Permitted

When a district court has already granted leave to amend, its discretion to deny further amendment is "'particularly broad.'"  *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).  Leave to amend should be denied when amendment would be futile, *see id.* at 355-356, especially where, as here, a plaintiff has failed to cure defects previously identified by the Court, *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1071-1072 (N.D. Cal. 2001), or has continued to advance a theory that the Court has already rejected, *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1155 (N.D. Cal. 2010); *Scognamillo v. Credit Suisse First Boston, LLC,* 587 F. Supp. 2d 1149, 1159 (N.D. Cal. 2008).

Plaintiffs have now tried and failed three times to construct viable claims:  once in the original Complaint, Dkt. No. 1; again in the First Amended Complaint filed in response to Twitter's first motion to dismiss, Dkt. No. 21; and once again in the Second Amended Complaint filed in response to this Court's dismissal order, Dkt. No. 48.  Each iteration has introduced only minor changes.  Nothing would be gained and much time and expense would be lost were this Court to give Plaintiffs a fourth bite at the apple.  Leave for any further amendment should therefore be denied.

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed.  And because any further amendments would be just as futile as Plaintiffs' now *three* attempts to state a claim, dismissal should be with prejudice.

Dated: September 13, 2016

Respectfully submitted,

_____/s/ Seth P. Waxman_____
SETH P. WAXMAN (admitted *pro hac vice*)
seth.waxman@wilmerhale.com
PATRICK J. CAROME (admitted *pro hac vice*)
patrick.carome@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:  (202) 663-6800
Facsimile:  (202) 663-6363

MARK D. FLANAGAN (CA SBN 130303)
mark.flanagan@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100

*Attorneys for Defendant*
**TWITTER, INC.**

CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2016, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

By:   /s/ Seth P. Waxman
          Seth P. Waxman